MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4203 (fax)
E-mail: michael@lozeaudrury.com
         doug@lozeaudrury.com

Attorneys for Plaintiff
GLOBAL COMMUNITY MONITOR

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL COMMUNITY MONITOR, a non-profit corporation,<br><br>       Plaintiff,<br><br>    vs.<br><br>ALAMEDA COUNTY INDUSTRIES, INC., a corporation.<br><br>       Defendant. | Case No. 11-00976<br><br>**STIPULATION TO DISMISS PLAINTIFF'S CLAIMS; [P~~ROPOSED~~] ORDER GRANTING DISMISSAL [FRCP 41(a)(2)]** |

WHEREAS, on December 17, 2010, Plaintiff Global Community Monitor ("GCM") provided Defendant Alameda County Industries, Inc. ("ACI") with a Notice of Violations and Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365.

WHEREAS, on March 2, 2011, GCM filed its Complaint against ACI in this Court, *Global Community Monitor v. Alameda County Industries, Inc,* Case No. 11-00976. Said Complaint incorporates by reference all of the allegations contained in GCM's Notice.

WHEREAS, GCM and ACI, through their authorized representatives and without either adjudication of GCM's claims or admission by ACI of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the allegations of GCM as set forth in the Notice and Complaint, thereby avoiding the costs and uncertainties of further litigation. A copy of the Settlement Agreement and Mutual Release of Claims ("Settlement Agreement"), without the

attached exhibits, entered into by and between GCM and ACI is attached hereto as Exhibit 1 and incorporated by reference.

WHEREAS, the parties submitted the Settlement Agreement via certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice and the 45-day review period set forth at 40 C.F.R. § 135.5 has completed and the federal agencies have submitted correspondence to the Court indicating that they have no objection to the terms of the Settlement Agreement.

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the parties that GCM's claims, as set forth in the Notice and Complaint, be dismissed.  The parties respectfully request an order from this Court dismissing such claims.  In accordance with paragraph 2 of the Settlement Agreement, the parties also request that this Court maintain jurisdiction over the parties through December 13, 2014, for the sole purpose of resolving any disputes between the parties with respect to enforcement of any provision of the Settlement Agreement.

Dated: November 28, 2011                Respectfully submitted,

LOZEAU DRURY LLP


By:      /s/ *Douglas J. Chermak*_____
         Douglas J. Chermak
         Attorney for Plaintiff Global Community Monitor


BRADY & VINDING


By:      *Michael V. Brady* (as authorized on 11/28/11) __
         Michael V. Brady
         Attorney for Defendant
         Alameda County Industries, Inc.

**[PROPOSED] ORDER**

Good cause appearing, and the parties having stipulated and agreed,

IT IS HEREBY ORDERED that Plaintiff Global Community Monitor's claims against Defendant Alameda County Industries, Inc., as set forth in the Notice and Complaint filed in Case No. 11-00976, are hereby dismissed.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the parties through December 13, 2014 for the sole purpose of enforcing compliance by the parties of the terms of the Settlement Agreement, attached to the parties' Stipulation to Dismiss as Exhibit 1.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated:  __11/30__, 2011      _____
Judge Edward M. Chen
United



# EXHIBIT 1

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between Global Community Monitor ("GCM") and Alameda County Industries, Inc. ("ACI") (collectively, the "SETTLING PARTIES") with respect to the following facts and objectives:

## RECITALS

**WHEREAS**, GCM is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement and restoration of waters of the State of California, including waters adjacent to urbanized areas of San Francisco Bay;

**WHEREAS**, ACI is a corporation organized under the laws of the State of California that owns and operates a solid waste, green waste, and recycling facility located at 610 Aladdin Avenue in San Leandro, California (the "Facility") pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit").  A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on or about December 17, 2010, GCM provided ACI with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, on March 2, 2011, GCM filed its Complaint in the United States District Court for the Northern District of California against ACI (*Global Community Monitor v. Alameda County Industries, Inc.,* Case No. 3:11-cv-00976-EMC).  A true and correct copy of the Complaint, including the 60-Day Notice Letter, is attached hereto as Exhibit B and incorporated by reference;

**WHEREAS**, ACI denies any and all of GCM's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, GCM and ACI, through their authorized representatives and without either adjudication of GCM's claims or admission by ACI of any alleged violation or other wrongdoing, have chosen to resolve in full GCM's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, GCM and ACI have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving GCM's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, GCM and ACI hereby agree as follows:

## EFFECTIVE DATE

1.  The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

## COMMITMENTS OF GCM

2.  **Stipulation to Dismiss and [Proposed] Order.** Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 18 below, GCM shall file a Stipulation to Dismiss and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Northern District of California ("District Court"), with this AGREEMENT attached and incorporated by reference, specifying that GCM is dismissing all claims in GCM's Complaint. Consistent with Paragraphs 24 and 25 herein, the Stipulation to Dismiss and [Proposed] Order shall state that the District Court will maintain jurisdiction through December 13, 2014 for purposes of resolving any disputes between the SETTLING PARTIES with respect to any provision of this AGREEMENT. If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void.

## COMMITMENTS OF ACI

3.  **Compliance with General Permit.**  ACI agrees to operate the Facility in compliance with the applicable requirements of the General Permit and Clean Water Act.

4.  **Implemented Storm Water Controls**.  ACI shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this AGREEMENT, including but not limited to, existing housekeeping measures.

5.  **Additional Best Management Practices.**  By April 1, 2012, ACI shall implement the following structural best management practices ("BMPs") to improve the storm water pollution prevention measures at the drop inlets, outfalls, and other industrial areas at the Facility:

   a.  ACI shall install a Clara Plug Flow Separator underground in the existing storm drain line for the reduction of large solids (greater than 100 micron) and oil & grease. The system will be housed in a 6' x 8' buried concrete vault with an internal bypass weir for peak flow bypass and a 100 gpm submersible pump.

   b.  ACI shall install a Retenu Roughing Filtration System to reduce solids down to 15-20 micron and associated heavy metals.  The system will include an inlet storage and backwash tank with the Retenu roughing filter, with a total footprint of 9' x 23'.

   c.  ACI shall install an Aquip Enhanced Filtration system to reduce fine particulates and heavy & dissociated metals in the storm water runoff before discharge.  The gravity discharge from the Aquip system can discharge to the existing storm drain line.  ACI shall use an Aquip 80SBE to treat 100 gpm.  The location of the Clara, Retenu, and Aquip systems are shown on the schematic attached as Exhibit C.

   d.  To reduce the overall volume of storm water being treated and based on the analytical results of water samples of the Facility's roof runoff

showing all parameters of concern being below the Levels of Potential Concern set forth in Paragraph 8 below, ACI shall install an upgraded system of gutters to divert runoff from the facility's roof past the treatment system and directly to the storm water system.

    e.    To improve storm water management controls in the Pit area, ACI shall install a 95-foot valley gutter along the southeast edge of the Pit to decrease storm water from entering the storm drain.

    f.    ACI shall ensure that all storm water from the Pit shall be discharged to the oil-water separator for eventual discharge into the sanitary sewer.

    g.    ACI shall design removable metal or rubber covers for all drop inlets at the Facility to prevent the accumulation of dirt, leaves and other sediment. The covers shall be placed over all drop inlets on or before July 1st at the end of each wet season, subsequent to appropriate maintenance of the filters described above. The covers shall be removed prior to the first rain event of the subsequent wet season. The covers shall be fitted to prevent such materials from entering the drop inlets and designed such that the covers will remain firmly in place while there is normal activity at the Facility.

6.    **Monitoring**. ACI agrees to perform the monitoring described herein during the 2011-2012, 2012-2013, and 2013-2014 wet seasons.

    a.    During the 2011-2012 and 2012-2013 wet seasons, ACI shall sample and analyze storm water discharges from four (4) qualifying storm events that result in discharge consistent with the requirements and protocols set forth in the General Permit. During the 2013-2014 wet season, ACI shall sample and analyze storm water discharges from three (3) qualifying storm events that result in discharge consistent with the requirements and protocols set forth in the General Permit.

      b.      ACI shall analyze each storm water sample taken in accordance with the General Permit and this Agreement for, at a minimum, total suspended solids, pH, oil and grease or total organic carbon, specific conductance, aluminum, chemical oxygen demand, iron, zinc, copper, and lead.

      c.      All maintenance, repair, and replacement activities relating to the Facility's storm water management program shall be recorded and described on appropriate log books or sheets.  Such logs shall include, but not be limited to, filter repairs and replacements.  Sample log sheets shall be included in the Facility's SWPPP.  Completed logs for each wet season shall be included as part of the Facility's Annual Report submitted to the San Francisco Bay Regional Water Quality Control Board ("Regional Board").

7.      **Monitoring Results.**  Results from ACI's sampling and analysis during the term of this AGREEMENT shall be provided to GCM within 30 days of receipt of the sampling results by ACI or its counsel.

8.      **Meet and Confer Regarding Exceedence of Levels of Potential Concern.**  If analytical results of storm water samples taken by ACI during the 2011-2012, 2012-2013, and 2013-2014 wet seasons indicate that storm water discharges from the Facility exceed the following levels of concern – Total Suspended Solids: 100 mg/L; Specific Conductance: 200 µmhos/cm;  Oil & Grease: 15 mg/L or Total Organic Carbon: 120 mg/L; pH: 6.5-8.5 s.u.; Aluminum: 0.75 mg/L; Zinc: 0.117 mg/L; Iron: 1.0 mg/L; Copper: 0.0636 mg/L; Lead: 0.0816 mg/L; and Chemical Oxygen Demand: 120 mg/L – ACI agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering additional BMPs aimed at reducing levels observed in storm water samples.

    In furtherance of that objective, ACI shall prepare a written statement ("Memorandum") discussing:

      (1) Any exceedance or exceedances;

(2) An explanation of the possible cause(s) and/or source(s) of any exceedance; and

(3) Responsive actions to improve its storm water management practices, including modified or additional feasible best management practices ("BMPs") to be considered to further reduce the possibility of future exceedance(s).

Such Memorandum shall be e-mailed and sent via first class mail to GCM not later than July 30th following the conclusion of each wet season.

9. Any additional measures set forth in the Memorandum shall be implemented as soon as practicable, but not later than the start of the subsequent wet season, except where the SETTLING PARTIES agree in writing to defer implementation of specific measures in order to effectively meet and confer in accordance with Paragraph 10. Within thirty (30) days of implementation, ACI's SWPPP shall be amended to include all additional BMP measures designated in the Memorandum.

10. Upon receipt of the Memorandum, GCM may review and comment on any additional measures. If requested by GCM within thirty (30) days of receipt of such Memorandum, GCM and ACI shall meet and confer and conduct a site inspection within sixty (60) days after the due date of the Memorandum to discuss the contents of the Memorandum and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the Levels of Concern. If within twenty-one (21) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Memorandum, the SETTLING PARTIES may agree to seek a settlement conference with the Judge assigned to this action pursuant to Paragraphs 24 and 25 below. If the SETTLING PARTIES fail to reach agreement on additional measures, GCM may bring a motion before the District Court consistent with Paragraphs 24 and 25 below. If GCM does not request a meet and confer regarding the Memorandum within the twenty-one (21) day comment period provided for in this paragraph, GCM shall waive any right to object to such Memorandum pursuant to this AGREEMENT.

11. Any concurrence or failure to object by GCM with regard to the reasonableness of any additional measures required by this AGREEMENT or implemented by ACI shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water into compliance with applicable water quality criteria.

12. In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, ACI shall permit representatives of GCM to perform one (1) additional site visit to the Facility per year during normal daylight business hours during the term of this AGREEMENT, provided that GCM provides ACI via e-mail with at least one week prior written notice.

13. **Provision of Documents and Reports.** During the life of this AGREEMENT, ACI shall provide GCM with a copy of all documents submitted to the Regional Board or the State Water Resources Control Board ("State Board") concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit. Such documents and reports shall be mailed to GCM contemporaneously with submission to such agency. ACI also shall provide GCM a copy of all documents referenced in this agreement, including but not limited to logs, photographs, or analyses, within seven (7) days of a written request (via e-mail or regular mail) by GCM.

14. **Amendment of SWPPP.** Within sixty (60) days of the Effective Date of this AGREEMENT, ACI shall amend the Facility's SWPPP to incorporate all changes, improvements, sample log forms, and best management practices set forth in or resulting from this AGREEMENT. ACI shall ensure that all maps, tables, and text comply with the requirements of the General Permit. ACI shall ensure that the SWPPP describes all structural and non-structural BMPs, details the measures to be installed, and discusses why such BMPs will be effective in addressing the pollutant sources at the Facility. A copy of the amended SWPPP shall be provided to GCM within thirty (30) days of completion.

15. **MITIGATION PAYMENT**. In recognition of the good faith efforts by ACI to comply with all aspects of the General Permit and the Clean Water Act, the SETTLING PARTIES agree that ACI will pay the sum of fifty thousand dollars ($50,000) to the Rose

Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects in the San Francisco Bay watershed relating to water quality improvements. Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 6008 College Avenue, Oakland, CA 94618, Attn: Tim Little. Payment shall be made by ACI to the Rose Foundation within fifteen (15) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT. ACI shall copy GCM with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the SETTLING PARTIES within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

16. **Fees, Costs, and Expenses**. As reimbursement for GCM's investigative, expert and attorneys' fees and costs, ACI shall pay GCM the sum of nineteen thousand dollars ($19,000). Payment shall be made by ACI within fifteen (15) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT. Payment by ACI to GCM shall be made in the form of a single check payable to "Lozeau Drury LLP Attorney-Client Trust Account," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by GCM that have or could have been claimed in connection with GCM's claims, up to and including the Effective Date of this AGREEMENT.

17. **Compliance Oversight Costs**: As reimbursement for GCM's future fees and costs that will be incurred in order for GCM to monitor ACI's compliance with this AGREEMENT and to effectively meet and confer and evaluate monitoring results for the Facility, ACI agrees to reimburse GCM for fees and costs incurred in overseeing the implementation of this AGREEMENT up to but not exceeding four thousand ($4,000.00) per wet season. Fees and costs reimbursable pursuant to this paragraph may include, but are not limited to, those incurred by GCM or its counsel to conduct site inspections, review of water quality sampling reports, review of annual reports, discussion with representatives of ACI concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, and water quality sampling. GCM shall provide an invoice containing an itemized description for any fees and costs claimed. Up to three annual payments

(one addressing monitoring associated with the 2011-2012 wet season, one addressing monitoring associated with the 2012-2013 wet season, and one addressing any monitoring associated with the 2013-2014 wet season,) shall be made payable to "Lozeau Drury LLP Attorney-Client Trust Account" within thirty (30) days of receipt of an invoice from GCM which contains an itemized description of fees and costs incurred by GCM to monitor implementation of the SETTLEMENT AGREEMENT during the previous twelve (12) months.

18.   **Review by Federal Agencies.**  GCM shall submit this AGREEMENT to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five (5) days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5.  The Agencies' review period expires forty-five (45) days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, copies of which shall be provided to ACI upon receipt by GCM.  In the event that the Agencies comment negatively on the provisions of this AGREEMENT, GCM and ACI agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies.  If GCM and ACI are unable to resolve any issue(s) raised by the Agencies in their comments, GCM and ACI agree to expeditiously seek a settlement conference with the Judge assigned to the Complaint in this matter to resolve the issue(s).

## NO ADMISSION OR FINDING

19.   Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation.  However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

20.   In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, including Alameda County Industries LLC and Alameda

County Industries AR, Inc., from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each other arising from GCM's allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

21. The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

22. For the period beginning on the Effective Date and ending on December 13, 2014, GCM agrees that neither GCM, its officers, executive staff, members of its governing board nor any organization under the control of GCM, its officers, executive staff, or members of its governing board, will file any lawsuit against ACI seeking relief for alleged violations of the Clean Water Act or violations of the General Permit at its facility located at 610 Aladdin Avenue in San Leandro. GCM further agrees that, beginning on the Effective Date and ending on December 13, 2014, GCM will not support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against ACI's facility located at 610 Aladdin Avenue in San Leandro that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge the Facility's compliance with the Clean Water Act or the General Permit.

## TERMINATION DATE OF AGREEMENT

23. This AGREEMENT shall terminate on December 13, 2014.

## DISPUTE RESOLUTION PROCEDURES

24. Except as specifically noted herein, any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer to resolve any dispute arising under this AGREEMENT. In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Magistrate Judge assigned to this action. In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the SETTLING PARTIES agree to submit the dispute via motion to the District Court.

25. In resolving any dispute arising from this AGREEMENT, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Distrct Court. The District Court shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof. The SETTLING PARTIES agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference and motion practice.

## BREACH OF SETTLEMENT AGREEMENT

26. **Impossibility of Performance.** Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established. In the event that the SETTLING PARTIES cannot timely agree upon the terms of such a stipulation, either of the SETTLING PARTIES shall have the right to invoke the dispute resolution procedure described herein.

## GENERAL PROVISIONS

27.     **Construction.**  The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

28.     **Choice of Law.** This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

29.     **Severability.**  In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

30.     **Correspondence.**  All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, overnight mail, or e-mail as follows:

If to GCM:

Denny Larson
Global Community Monitor
P.O. Box 1784
El Cerrito, CA 94530
denny@gcmonitor.org

And to:

Michael R. Lozeau
Douglas J. Chermak
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel:  (510) 836-4200
michael@lozeaudrury.com
doug@lozeaudrury.com

If to ACI:

Louie Pellegrini
Alameda County Industries, Inc.

      610 Aladdin Avenue
      San Leandro, CA 94577

      And to:

      David Cohen
      Cohen & Ostler, A Professional Corporation
      455 N. Whisman Road, Suite 100
      Mountain View, California 94043

      Michael Brady
      Brady & Vinding
      400 Capitol Mall, Suite 2640
      Sacramento, CA 95814
      mbrady@bradyvinding.com

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

31. **Counterparts.** This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

32. **Assignment**. Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

33. **Modification of the Agreement:** This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

34. **Full Settlement.** This AGREEMENT constitutes a full and final settlement of this matter. It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

35. **Integration Clause.** This is an integrated AGREEMENT. This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

36. **Authority.** The undersigned representatives for GCM and ACI each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: 9/28, 2011

ALAMEDA COUNTY INDUSTRIES, INC.

By: Louie Pelligrini
Title: Vice President

Date: 9/16, 2011

GLOBAL COMMUNITY MONITOR

By: Denny Larson
Title: Executive Director

**APPROVED AS TO FORM:**

Date: 9/29, 2011

For DEFENDANT
BRADY & VINDING

By: Michael V. Brady, Esq.

Date: 9/16, 2011

For PLAINTIFF
LOZEAU DRURY LLP

By: Michael R. Lozeau, Esq.

14

SETTLEMENT AGREEMENT: Global Community Monitor v. Alameda County Industries, Inc. –
Case No. 3:11-cv-00976-EMC